# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### CEDAR RAPIDS DIVISION

LYNN E. ROLLIE,

               Plaintiff,

vs.

ANDREW SAUL,
Commissioner of Social Security,

               Defendant.

No. 18-CV-129-CJW-KEM

**ORDER**

---

Claimant Lynn E. Rollie ("claimant") seeks judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for disability and disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34 (the "Act"). Claimant contends that the Administrative Law Judge ("ALJ") erred in determining that claimant was not disabled and that the ALJ was not appointed in a constitutional manner. For the following reasons, the Court **affirms** the Commissioner's decision.

## I.     BACKGROUND

The Court adopts the facts as set forth in the parties' Joint Statement of Facts and therefore will only summarize the pertinent facts here. (Doc. 11). At the time of the hearing before the ALJ, claimant was forty-seven years old. (AR 25).[1] Claimant has a high school education, completed one year of college, and is able to communicate in English. (AR 23, 25).

---

[1] "AR" refers to the administrative record below.

On September 17, 2015, claimant filed an application for disability and disability insurance benefits, alleging an onset date of July 23, 2015. (AR 15). The Social Security Administration denied claimant's applications initially and on reconsideration. (*Id.*). Claimant filed a written request for a hearing. (*Id.*). On December 6, 2017, ALJ Robert A. Kelley held a hearing on claimant's application. (*Id.*). On March 9, 2018, the ALJ denied claimant's application for benefits. (AR 15-26). On October 4, 2018, the Appeals Council denied claimant's request for review, making the ALJ's decision the final decision of the Commissioner. (AR 1-6).

On December 5, 2018, claimant filed her complaint in this Court. (Doc. 1). On July 3, 2019, claimant filed her brief. (Doc. 12). On July 26, 2019, the Commissioner filed his brief. (Doc. 13). On August 12, 2019, claimant filed a reply brief. (Doc. 14). On August 13, 2019, the Court deemed this case fully submitted and ready for decision and referred this case to a United States Magistrate Judge for a Report and Recommendation. (Doc. 15). On September 10, 2019, the Court unreferred the case.

## II. *DISABILITY DETERMINATIONS AND BURDEN OF PROOF*

A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). An individual has a disability when, due to his physical or mental impairments, "he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists . . . in significant numbers either in the region where such individual lives or in several regions of the country." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B). If the claimant is able to do work which exists in the national economy but is unemployed because of inability to

get work, lack of opportunities in the local area, economic conditions, employer hiring practices, or other factors, the ALJ will still find the claimant not disabled.

To determine whether a claimant has a disability within the meaning of the Act, the Commissioner follows the five-step sequential evaluation process outlined in the regulations. *Kirby v. Astrue*, 500 F.3d 705, 707-08 (8th Cir. 2007). First, the Commissioner will consider a claimant's work activity. If the claimant is engaged in substantial gainful activity, then the claimant is not disabled. 20 C.F.R. § 416.920(a)(4)(i). "Substantial" work activity involves physical or mental activities. "Gainful" activity is work done for pay or profit, even if the claimant did not ultimately receive pay or profit.

Second, if the claimant is not engaged in substantial gainful activity, then the Commissioner looks to the severity of the claimant's physical and mental impairments. *Id*. § 416.920(a)(4)(ii). If the impairments are not severe, then the claimant is not disabled. An impairment is not severe if it does "not significantly limit [a] claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707.

The ability to do basic work activities means the ability and aptitude necessary to perform most jobs. *Bowen v. Yuckert*, 482 U.S. 137, 141 (1987). These include: (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*.; *see also* 20 C.F.R. § 404.1521.

Third, if the claimant has a severe impairment, then the Commissioner will determine the medical severity of the impairment. 20 C.F.R. § 416.920(a)(4)(iii). If the impairment meets or equals one of the presumptively disabling impairments listed in the

regulations, then the claimant is considered disabled regardless of age, education, and work experience. *Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's residual functional capacity ("RFC") and the demands of his past relevant work. 20 C.F.R. § 416.920(a)(4)(iv). If the claimant can still do his past relevant work, then he is considered not disabled. *Id.* Past relevant work is any work the claimant performed within the fifteen years before his application that was substantial gainful activity and lasted long enough for the claimant to learn how to do it. *Id.*, at § 416.960(b). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional tasks or, in other words, what the claimant can still do despite [ ] her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (citations and internal quotation marks omitted). The RFC is based on all relevant medical and other evidence. The claimant is responsible for providing the evidence the Commissioner will use to determine the RFC. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). If a claimant retains enough RFC to perform past relevant work, then the claimant is not disabled.

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to show there is other work the claimant can do, given the claimant's RFC, age, education, and work experience. The Commissioner must show not only that the claimant's RFC will allow him to make the adjustment to other work, but also that other work exists in significant numbers in the national economy. *Eichelberger*, 390 F.3d at 591. If the claimant can make the adjustment, then the Commissioner will find the claimant not disabled. At Step Five, the Commissioner has the responsibility of developing the claimant's medical history before making a determination about the existence of a disability. The burden of

persuasion to prove disability remains on the claimant.  *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

## III. THE ALJ'S FINDINGS

The ALJ made the following findings at each step:

At Step One, the ALJ found that claimant had not engaged in substantial gainful activity since July 23, 2015.  (AR 18).

At Step Two, the ALJ found that claimant had the severe impairments of "fibromyalgia; history of cervical fusion surgery; disorder of muscle, ligament and fascia; total right knee replacement; [and] depression."  (*Id.*).  Although the ALJ noted claimant had other impairments, including carpal tunnel syndrome and rheumatoid arthritis, the ALJ found that they did not have more than a minimum effect on claimant's ability to perform basic work functions and thus did not find them severe.  (*Id.*).

At Step Three, the ALJ found that claimant did not have an impairment or combination of impairments that met or medically equaled a presumptively disabling impairment listed in the relevant regulations.  (AR 18-19).

As Step Four, the ALJ found claimant had:

the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can stand/walk for up to 6 hours in an 8-hour workday; can sit for up to 6 hours in an 8-hour workday; never crawl or climb ladders, ropes or scaffolds; only occasionally balance, stoop, kneel, crouch or climb ramps/stairs; only occasionally overhead reaching with the left upper extremity; limited to unskilled work in that the individual is able to understand, remember and carry out only routine, repetitive tasks; and, able to maintain focus, attention and concentration for two hours at a time, that is, during the standard two-hour work intervals between normal breaks throughout the workday.

(AR 19).  Also at Step Four, the ALJ found that claimant could not perform any past relevant work.  (AR 25).

At Step Five, the ALJ found that given claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that claimant could perform.  (AR 25-26).

## IV.    THE SUBSTANTIAL EVIDENCE STANDARD

The Commissioner's decision must be affirmed "if it is supported by substantial evidence on the record as a whole."  *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . ..").  "Substantial evidence is less than a preponderance, but enough that a reasonable mind might accept as adequate to support a conclusion."  *Lewis*, 353 F.3d at 645 (citations and internal quotation marks omitted).  The Eighth Circuit Court of Appeals explains the standard as "something less than the weight of the evidence and [that] allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal."  *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994) (citations and internal quotation marks omitted).

In determining whether the Commissioner's decision meets this standard, a court "consider[s] all of the evidence that was before the ALJ, but . . . do[es] not re-weigh the evidence."  *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted).  A court considers both evidence that supports the Commissioner's decision and evidence that detracts from it.  *Kluesner v. Astrue*, 607 F.3d 533, 536 (8th Cir. 2010).  The Court must "search the record for evidence contradicting the [Commissioner's] decision and give that evidence appropriate weight when determining whether the overall evidence in support is substantial."  *Baldwin v. Barnhart*, 349 F.3d 549, 555 (8th Cir. 2003) (citing *Cline v. Sullivan*, 939 F.2d 560, 564 (8th Cir. 1991)).

In evaluating the evidence in an appeal of a denial of benefits, the Court must apply a balancing test to assess any contradictory evidence. *Sobania v. Sec'y of Health & Human Servs.*, 879 F.2d 441, 444 (8th Cir. 1989). The Court, however, "do[es] not reweigh the evidence presented to the ALJ," *Baldwin*, 349 F.3d at 555 (citing *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995)), or "review the factual record de novo." *Roe v. Chater*, 92 F.3d 672, 675 (8th Cir. 1996) (quoting *Naber v. Shalala*, 22 F.3d 186, 188 (8th Cir. 1994)). Instead, if, after reviewing the evidence, the Court "find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the Court] must affirm the [Commissioner's] denial of benefits." *Kluesner*, 607 F.3d at 536 (quoting *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008)). This is true even in cases when the Court "might have weighed the evidence differently." *Culbertson*, 30 F.3d at 939 (quoting *Browning v. Sullivan*, 958 F.2d 817, 822 (8th Cir. 1992)). The Court may not reverse the Commissioner's decision "merely because substantial evidence would have supported an opposite decision." *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984); *see Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005) ("[A]n administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion" (citation omitted)).

## V.    DISCUSSION

Claimant argues that the ALJ erred in assessing claimant's physical RFC, that the ALJ did not provide a sufficient basis for the weight assigned to the opinion of Dr. Dwight Schroeder, M.D., claimant's treating psychiatrist, and that the ALJ was not appointed in a constitutional manner, in light of the United States Supreme Court's opinion in *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018). (Doc. 12). The Court will address each argument in turn.

### A.    Assessment of Claimant's Physical RFC

Claimant argues that the ALJ's physical RFC was not supported by sufficient medical evidence.  (Doc. 12, at 3-7).  Claimant argues that the medical evidence shows she should be limited to a sedentary exertional level because of her physical impairments. (*Id.*, at 7).  Claimant asserts that in assessing claimant with a light work RFC, the ALJ erred by failing to explain how claimant could stand and walk enough to perform light work before her knee replacement (*id.*, at 5), and by relying on the opinions of nonexamining agency medical consultants who "mistakenly found [claimant] could walk two miles without pain" (*id.*, at 6).  Claimant also accuses the ALJ of "playing doctor" by arriving at the ALJ's own opinion from the medical records and "reject[ing] the only available medical opinion evidence concerning [claimant's] handling limitations[.]" (*Id.*).  Finally, claimant argues that the ALJ erred in not further developing the record. (*Id.*, at 7).

This Court is to determine whether substantial evidence in the record as a whole supports the ALJ's findings.  *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000). "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion.    In determining whether existing evidence is substantial, we consider evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002) (internal citation omitted).  This Court will not reverse an ALJ's decision that is supported by substantial evidence, even if substantial evidence exists in the record that would have supported a contrary outcome, or because this Court may have decided the case differently.  *Id.*

### 1.    RFC Determination

In arriving at an RFC, an ALJ is required to consider relevant evidence, which includes but is not limited to medical opinions.  *Pearsall v. Massanari*, 274 F.3d 1211,

1218 (8th Cir. 2001). "[T]here is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016) (citations omitted). An RFC assessment, however, remains a medical question. *Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001). Thus, "some medical evidence must support the determination of the claimant's [RFC], and the ALJ should obtain medical evidence that addresses the claimant's ability to function in the workplace." *Id.*, at 712 (internal quotation marks and citation omitted). An ALJ "is therefore required to consider at least some supporting evidence from a [medical] professional." *Id.* (internal quotation marks and citation omitted). An ALJ's RFC assessment is acceptable if it is within the "zone of choice" based on the evidence in the record. *Brown v. Berryhill*, No. C16-0179-LTS, 2018 WL 1001022, at *9 (N.D. Iowa Feb. 21, 2018) (quoting *Culbertson*, 30 F.3d at 939).

Claimant relies on medical records reflecting claimant's subjective pain complaints about her back and knees. (Doc. 12, at 4-5). The ALJ found that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not entirely consistent with the medical evidence and other evidence in the record . . .." (AR 21). The ALJ considered claimant's daily activities and weak medical evidence as inconsistent with claimant's subjective description of debilitating pain. (AR 21-22). The ALJ noted claimant's chiropractor reported that claimant was "returned to work by January 2015." (AR 22). The ALJ also noted inconsistent medical records in 2015 about the degree of alleged pain claimant suffered. (*Id.*). The ALJ also noted "with particular interest" claimant's April 2016 self-assessment that claimant was "completely" able to carry out her everyday physical activities and described her pain with a rating of 1 on a scale of 1 to 10, with 0 being no pain. (AR 23). The ALJ further noted that after claimant had knee surgery in July 2016, it "appeared to improve her pain." (AR 22). The ALJ noted that despite claimant's description of debilitating pain, claimant's pain is

only treated with over-the-counter pain medications. (AR 23). Finally, the ALJ pointed out that none of claimant's treating doctors recommended physical restrictions. (AR 24).

Here, the ALJ reviewed all of the evidence, including the medical evidence, and concluded that substantial evidence in the record as a whole supported an RFC assessment that claimant could perform light work. The Court finds the record supports the ALJ's assessment. Even if claimant suffered from some pain, it was her burden to show that the pain was so severe that it prevented her from working. *See King v. Astrue*, 564 F.3d 978, 979 (8th Cir. 2009).

Claimant asserts that the ALJ erroneously relied on the mistaken assertion of the nonexamining agency consulting physician that claimant could walk for two miles. (Doc. 12, at 3 n.4). Claimant argues that her chiropractor concluded claimant "was able to walk about 2 miles without pain" in her lower back, but went on to state that claimant's "knee pain is still present, especially with walking." (*Id.*). Claimant argues that the agency medical examiners were "ridiculous[ ]" in concluding claimant could walk for two miles and the ALJ thoughtlessly adopted the conclusion without looking into its source. (*Id.*). Claimant speculates that "[t]he ALJ did not apparently know where in the record the 'walking 2 miles without pain' was located as the ALJ provided no citation for that record, and likely just assumed wrongly the nonexamining agency medical consultants had fairly presented the seemingly contradictory fact." (*Id.*). In its brief to this Court, the Commissioner ignored this assertion of error. Nevertheless, the Court finds that the ALJ's RFC assessment remains supported by substantial evidence in the records as a whole.

In arriving at defendant's RFC assessment, the ALJ did rely on the fact claimant "reported she was able to walk 2 miles without pain" as "tending to erode" claimant's assertion that treatment to her knees provided her with no relief. (AR 22). Contrary to

claimant's speculation, the ALJ cited to "Exhibit 4F" for this finding.[2]  Exhibit 4F is the exhibit containing records from the Cedar Rapids Pain Associates, which includes the July 28, 2015 entry at issue.  The entry reflects claimant's subjective complaint for why she is visiting her chiropractor.  In its entirety, it reads:

> Her neck is sore unless she holds her head looking straight ahead.  If she has to look to either side it aggravates her pain.  The left side is still worse and the pain goes into her left trapezius.  She is not having any pain or numbness into her left arm.  Her headaches have been better as well.  Her lower back pain has been doing better.  She was able to walk about 2 miles without pain.  He knee pain is still present, especially with walking.  She did notice that her pain was better after her last treatment for about a day.

(AR 438).  In his decision, the ALJ stated that he carefully considered "all the evidence." (AR 16).  The Court presumes the ALJ properly discharged his official duties as stated in his decision.  *See, e.g.*, *Wilburn v. Astrue*, 626 F.3d 999, 1003-04 (8th Cir. 2010) (applying the presumption of regularity to conclude the ALJ discharged his official duties as described).  Thus, despite claimant's speculation that the ALJ did not consider the entirety of the above paragraph, the presumption is that he did.  It is also presumed that the ALJ considered the entry for the next appointment on July 31, 2015, when claimant stated that "[s]he finds walking up hills or steps and work activities to be aggravating to her knees" but that "[w]alking on flat, even ground is not too bad."  (AR 441).

In short, there is no basis to conclude that the ALJ misunderstood the medical evidence.  Even if the ALJ erred, however, and believed claimant had no pain in her legs from walking, there is no reason to believe that this error changed his decision.  The fact is claimant was able to walk two miles, despite whatever pain she felt.  The ALJ had a

---

[2] The Court acknowledges that the citation is given before the ALJ's discussion of claimant's ability to walk without pain.  The fact that the citation immediately precedes this discussion, however, makes it plain that the ALJ was familiar with the location of this information in the record.

basis for discounting claimant's subjective description of the intensity of her pain. With the absence of any work restrictions imposed by her treating doctors, the ALJ did not err in finding claimant could stand or walk for up to six hours a day. (AR 19). In claimant's RFC, the ALJ restricted claimant to never climbing ladders, ropes, or scaffolds and only occasionally climbing ramps or stairs. (*Id.*). There is no indication that the ALJ would have decided differently if he had been mistaken about whether claimant had pain in her knees when she walked two miles and, thus, if there was error, it was harmless. *See, e.g.*, *Wright v. Colvin*, 789 F.3d 847, 852 (8th Cir. 2015) (excusing harmless error); *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (finding error harmless when claimant cannot show that it would have affected the ALJ's decision); *Renfrow v. Astrue*, 496 F.3d 918, 921 (8th Cir. 2007) (finding harmless error when claimant could not show that the ALJ would have reached a different conclusion).

### 2. *Handling Limitations*

Claimant accused the ALJ of "playing doctor" and claimed he erred in rejecting medical opinions about claimant's limitations relating to her hands. (Doc. 12, at 6). The nonexamining agency consulting physicians concluded that claimant was limited to frequent handling with her non-dominant left hand and had no limitations with her dominant right hand. (AR 88, 103, 238). The ALJ gave the opinion on claimant's non-dominant hand limitations "little weight" because he found it had "insufficient support in the objective medical evidence." (AR 24-25). The ALJ did not, however, identify the medical evidence he relied on to reject this limitation. In arguing that the ALJ erred, claimant cites only to claimant's hearing testimony when she stated she had difficulty holding tools and opening jars (AR 62), claimant's Function Report form when she expressed similar limitations (AR 262), and a medical record reflecting claimant had "Heberden's and Bouchard's nodes. No synovitis or deformity in hands, wrists or elbows." (AR 1877).

It would have been preferable for the ALJ to identify the medical evidence he found did not support the opinion that claimant had limitations to her handling ability on her non-dominant hand. It is, however, ultimately claimant's responsibility to prove her functional limitation, not the ALJ's burden to prove the RFC assessment. *Baldwin*, 349 F.3d at 556 ("It is the claimant's burden, and not the Social Security Commissioner's burden, to prove the claimant's RFC."). Claimant's evidence is sparse and largely based on her own assertions. Although she cites to one medical record noting "nodes" on her hand, she provides no citation to medical records that states that the nodes had any impact on her handling abilities. Thus, claimant cannot show the ALJ erred.

In any event, as the Commissioner points out, any error was harmless because the three jobs the vocational expert identified as available to claimant do not require more than frequent handling. (AR 26, 77-78; DICTIONARY OF OCCUPATIONAL TITLES (DOT) 209.587-034, 1991 WL 671-802; DOT 207.685-014, 1991 WL 971745); DOT 209.667-014, 1991 WL 671807). Thus, any error was harmless.

### 3. *Development of the Record*

Finally, claimant argues the ALJ erred by not developing the record. (Doc. 12, at 7). Claimant argues the ALJ should have obtained "the opinions of an examining or treating physician as to [claimant's] physical limitations, and in particular as to [claimant's] standing and walking limitations . . .." (*Id.*). Claimant argues she was prejudiced by this failure to develop the record because if she were found to be limited to a sedentary exertional level at her age, she would be deemed disabled. (*Id.*).

Because social security hearings are non-adversarial, an ALJ has an independent duty to fully and fairly develop the record even when a claimant is represented by counsel. *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004). In assessing whether an ALJ has fulfilled this duty, a court must consider whether the record contained sufficient evidence for the ALJ to make an informed decision. *Haley v. Massanari*, 258 F.3d 742, 749 (8th

Cir. 2001) (citations omitted). "[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber*, 22 F.3d at 189. An ALJ's decision is proper if the ALJ has developed a "reasonably complete record." *Clark v. Shalala*, 28 F.3d 828, 830-31 (8th Cir. 1994) (holding an ALJ fulfilled his duty to develop the record without further inquiring into claimant's non-exertional impairments or asking follow-up questions of a testifying witness). Absent unfairness or prejudice, the decision of an ALJ should not be remanded for failure to develop the record. *Onstad v. Shalala*, 999 F.2d 1232, 1234 (8th Cir. 1993).

Here, the record was sufficiently developed for the ALJ to reach an informed decision. *See Haley*, 258 F.3d at 749; *Clark*, 28 F.3d at 830-31. Claimant had the burden to prove her functional limitations. *Baldwin*, 349 F.3d at 556. The ALJ had significant medical records relating to claimant's back and leg complaints and none of them contained any restrictions or limitations on claimant's ability to work, stand, or walk. Claimant has not shown that she was treated unfairly or suffered prejudice. Claimant's assertion that she would have been found to be limited to sedentary work if only the ALJ would have further developed the record is nothing more than conjecture on this record.

Thus, the Court finds substantial evidence in the record as a whole supported claimant's physical RFC assessment and such a finding was within the ALJ's zone of choice.

### B.    *Opinion Testimony*

Claimant asserts that the ALJ erred in discounting the opinion of her psychiatrist, Dr. Schroeder. (Doc. 12, at 8-11). Claimant argues that the ALJ's failure to "cite to any particular note or record" means that the ALJ failed to provide a good reason for discounting the weight afforded Dr. Schroeder's opinion. (*Id.*, at 9). Claimant argues

that "[t]he ALJ's discussion of Dr. Schroeder's treatment notes was brief and did not explain what the ALJ found inconsistent between Dr. Schroeder's notes and his opinions." (*Id.*, at 10). Claimant then speculates that this was because the ALJ was unable to read Dr. Schroeder's notes. (*Id.*).

"It is the ALJ's duty to assess all medical opinions and determine the weight to be given these opinions." *Brown*, 2018 WL 1001022, at *9. In evaluating medical opinions, the ALJ will give controlling weight to the opinion of a treating source's medical opinion if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. 20 C.F.R. § 404.1527(c)(2).[3] In the absence of an opinion from a treating source that is entitled to controlling weight, the ALJ must consider several factors in determining the weight to give to the various medical opinions, including the examining or treatment relationship a medical source has with the claimant, how well the opinion is supported by evidence, and the consistency of the opinion with the record as a whole. 20 C.F.R. § 404.1527(c). In assessing medical opinions, the ALJ need not explicitly discuss each factor, as long as the ALJ considers the factors set forth in the regulations. *See Molnar v. Colvin*, No. 412-CV-1228-SPM, 2013 WL 3929645, at *2 (E.D. Mo. July 29, 2013); 20 C.F.R. § 404.1527(c).

According to Social Security Ruling ("SSR") 96-2p,2 the regulations require that whenever an ALJ denies benefits, the decision:

---

[3] New regulations for evaluating medical opinions went into effect on March 27, 2017, and some, by their terms, apply retroactively. *See* REVISIONS TO RULES REGARDING THE EVALUATION OF MEDICAL EVIDENCE, 82 Fed. Reg. 5844 (Jan. 18, 2017). These new rules are substantively the same as the old rules, and the Eighth Circuit Court of Appeals has applied them retroactively. *See, e.g.*, *Chesser v. Berryhill*, 858 F.3d 1161, 1164 (8th Cir. 2017). Unless otherwise noted, for regulations on opinion evidence, the Court will refer to the regulations that became effective on March 27, 2017.

must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.

Titles II & XVI: Giving Controlling Weight to Treating Source Med. Opinions, SSR 96-2P (S.S.A. July 2, 1996); *see* 20 C.F.R. § 402.35(b)(1) (SSRs "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations that we have adopted."). Ultimately, an ALJ must "give good reasons" to explain the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2); *see also Reece v. Colvin*, 834 F.3d 904, 909 (8th Cir. 2016) ("Whether the ALJ gives the opinion of a treating [source] great or little weight, the ALJ must give good reasons for doing so."); *Prosch*, 201 F.3d at 1013 ("Whether the ALJ grants a treating physician's opinion substantial or little weight, the regulations provide that the ALJ must 'always give good reasons' for the particular weight given to a treating physician's evaluation.").

Here, in a Mental Medical Source Statement form, Dr. Schroeder opined that claimant was "seriously limited" or "unable to meet competitive standards" for 18 out of 25 mental abilities. (AR 1895-96). The form gave instructions to the medical source to provide a written explanation for any mental abilities rated in these categories; Dr. Schroeder did not do so. (*Id.*). The ALJ gave these opinions "little weight." (AR 24). In explaining the reason for the weight he afforded Dr. Schroeder's opinion, the ALJ stated that "[(1)] it is far too heavily reliant upon the claimant's own subjective reporting of symptoms/limitations; [(2)] it is not well-reasoned or internally supported by sufficient narrative explanation, or by citation to signs or laboratory findings; and, [(3)] it finds very little support/consistency in the longitudinal record evidence." (*Id.*).

In arguing that the ALJ erred in the weight he afforded Dr. Schroeder's opinion, claimant ignores the first two reasons the ALJ provided. An ALJ is entitled to give less weight to the opinion of a treating doctor when the doctor's opinion is based largely on the plaintiff's subjective complaints rather than on objective medical evidence. *Kirby*, 500 F.3d at 709 (citing *Vandenboom v. Barnhart*, 421 F.3d 745, 749 (8th Cir. 2005)). The ALJ did not, however, explain why he believed Dr. Schroeder was too reliant on claimant's subjective reporting, and it is not apparent on the face of the Mental Health Source Statement. On the other hand, in reviewing Dr. Schroeder's medical records, the only tests he had claimant perform were the Generalized Anxiety Disorder test and a CESD-R test at her initial visit on June 11, 2015. (AR 1068-69). All other records reflect only claimant's subjective statements to Dr. Schroeder. (AR 1070-88). As noted, the ALJ stated that he reviewed all of the medical records and he is presumed to have done so. Thus, there is a reasonable basis for the ALJ to have concluded that Dr. Schroeder's opinion was based largely on claimant's subjective statements.

The record clearly supports the ALJ's second reason for discounting the weight he afforded to Dr. Schroeder's opinion. Dr. Schroeder reflected his opinion in a checklist form. The "checklist format, generality, and incompleteness of the assessments limit [the assessments's] evidentiary value." *Holmstrom v. Massanari*, 270 F.3d 715, 721 (8th Cir. 2001). Dr. Schroeder provided no reasons or narrative or citations to support his opinions, even though he was instructed to do so on the form. (AR 1893-1898). This, too, is a good reason for discounting the weight the ALJ afforded Dr. Schroeder's opinion. *See Papesh v. Colvin*, 786 F.3d 1126, 1128-29 (8th Cir. 2015) (finding that the failure by a treating physician to provide an explanation for opinions reflected in a checklist form is grounds for discounting the weight to afford such an opinion); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) (finding that the ALJ properly

discounted a treating physician's opinion when it consisted of checklist forms, cited no medical evidence, and provided little to no elaboration).

Claimant's focus was on only the third reason the ALJ articulated; the support or consistency in the longitudinal record. As articulated, the ALJ did not limit this to inconsistencies between Dr. Schroeder's opinion and Dr. Schroeder's treatment notes, as claimant seems to assume.[4] As stated, the inconsistencies the ALJ found were with the longitudinal record as a whole. The ALJ noted that the consulting state agency psychologists concluded claimant was not as mentally impaired as Dr. Schroeder opined. (AR 19). The ALJ also pointed out that in April 2016 claimant herself described her mental health as "very good" and stated she had no recent emotional issues. (AR 23). This is inconsistent with notes from Dr. Schroeder's visit with claimant in April 2016, when he assessed her mood as "fair" and found anxiety "present." (AR 1080). "Inconsistencies with other evidence in the record, including other doctors' opinions is sufficient for discounting a medical source opinion." *Stearns v. Berryhill*, No. C17-2031-LTS, 2018 WL 4380984, at *7 (N.D. Iowa Sept. 14, 2018) (citing *Goff*, 421 F.3d at 790-91).

Claimant cites to other decisions by this Court reversing the Commissioner's decision when an ALJ failed to provide good reasons for the weight afforded a treating doctor's opinion. (Doc. 12, at 9). Those cases are factually distinguishable. In all three cases, *White v. Commissioner of Social Security*, No. C18-2005-LTS, 2019 WL 1239852, at *3-4 (N.D. Iowa Mar. 18, 2019), *Ware v. Berryhill*, No. C17-88-LTS, 2018 WL 3437078, at *7 (N.D. Iowa July 17, 2018), and *Kinseth v. Colvin*, No. C12-3033-MWB, 2013 WL 4482998, at *11 (N.D. Iowa Aug. 20, 2013), the ALJ's sole reason for

---

[4] The Court rejects, as rank speculation, the assertion that the lack of specific reference to Dr. Schroeder's notes was because the ALJ could not read them. The Court had no serious difficulty reading Dr. Schroeder's notes. (AR 1070-88).

discounting the weight afforded to a treating physician's opinion was a conclusory assertion that it was inconsistent with the rest of the evidence without any explanation of how or why it was inconsistent. Here, in contrast, the ALJ based his reasoning on multiple grounds, only one of which was inconsistency with the record, and the ALJ cited at least two instances of inconsistency.

The Court finds that the ALJ gave good reasons for the weight he afforded Dr. Schroeder's opinion and that those reasons are supported by substantial evidence in the record as a whole. Thus, the Court finds the ALJ did not err in affording Dr. Schroeder's psychological opinion little weight.

### C.    *Appointments Clause*

Claimant argues that, in light of the United States Supreme Court's decision in *Lucia*, 138 S. Ct. 2044, the ALJ was an inferior officer not appointed in a constitutional manner, and, accordingly, claimant alleges that she is entitled to a new hearing before a properly appointed ALJ. (Doc. 12, at 11-18). Claimant did not raise the Appointments Clause issue before the ALJ or during her request for review by the Appeals Council. (AR 399-405).

The Supreme Court in *Lucia* stated "'one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case' is entitled to relief." *Lucia*, 138 S. Ct. at 2055 (quoting *Ryder v. United States*, 515 U.S. 177, 182-83, (1995)). In *Lucia*, the claimant "made just such a timely challenge: He contested the validity of [the presiding ALJ's] appointment before the Commission, and continued pressing that claim in the Court of Appeals and this Court." *Id*. Since *Lucia*, this Court has addressed whether a social security claimant waives an Appointments Clause challenge by failing to raise the challenge before the ALJ or the Appeals Council. In each case, the Court has found that the claimant waived the argument by not raising it during the administrative proceedings. *See, e.g.*, *Vallecillo v. Saul*, No. 18-CV-2034,-

CJW-MAR, 2019 WL 4215125, at *3-4 (N.D. Iowa Sept. 5, 2019); *Sexton v. Saul*, No. C18-1024-LTS, 2019 WL 3845379, at *7-8 (N.D. Iowa Aug. 15, 2019); *Frazer v. Saul*, No. C18-2015-LTS, 2019 WL 3776996, at *4 (N.D. Iowa Aug. 12, 2019); *Murphy v. Saul*, No. 18-CV-2037-CJW-KEM, 2019 WL 3502912, at *7-8 (N.D. Iowa Aug. 1, 2019); *Dewbre v. Comm'r of Soc. Sec.*, No. 18-CV-4055-LRR-KEM, 2019 WL 3752970, at *5-6 (N.D. Iowa Aug. 8, 2019) (report & recommendation); *Murphy v. Comm'r of Soc. Sec.*, No. 18-CV-61-LRR, 2019 WL 2372896, at *6-7 (N.D. Iowa Apr. 10, 2019); *Anderson v. Comm'r of Soc. Sec.*, No. 18-CV-24-LRR, 2019 WL 1212127, at *5 (N.D. Iowa Feb. 19, 2019); *Iwan v. Comm'r of Soc. Sec.*, No. 17-CV-97-LRR, 2018 WL 4295202, at *9 (N.D. Iowa Sept. 10, 2018); *Thurman v. Comm'r of Soc. Sec.*, No. 17-CV-35-LRR, 2018 WL 4300504, at *9 (N.D. Iowa Sept. 10, 2018); *Davis v. Comm'r of Soc. Sec.*, No. 17-CV-80-LRR, 2018 WL 4300505, at *8-9 (N.D. Iowa Sept. 10, 2018).

Every other district court in the Eighth Circuit to address this issue has also found a Social Security claimant's Appointments Clause challenge raised for the first time on judicial review to be forfeited. *See, e.g.*, *Hernandez v. Berryhill*, No. 8:18CV274, 2019 WL 1207012, at *6 (D. Neb. Mar. 14, 2019); *Kimberly B. v. Berryhill*, No. 17-CV-5211 (HB), 2019 WL 652418, at *15 (D. Minn. Feb. 15, 2019); *Audrey M.H. v. Berryhill*, No. 17-CV-4975 (ECW), 2019 WL 635584, at *12 (D. Minn. Feb. 14, 2019); *Catherine V. v. Berryhill*, No. 17-3257 (DWF/LIB), 2019 WL 568349, at *2 (D. Minn. Feb. 12, 2019); *Bowman v. Berryhill*, No. 4:18-CV-157 RP-HCA, 2018 WL 7568360, at *12 (S.D. Iowa Dec. 13, 2018).

This Court's decisions are also consistent with the vast majority of other district courts' decisions holding that a claimant waives or forfeits an Appointments Clause challenge made under *Lucia* by not raising the issue during the administrative proceedings. *See, e.g.*, *Morrow v. Berryhill*, No. C 18-04641 WHA, 2019 WL 2009303,

at *4 (N.D. Cal. May 7, 2019); *Kline v. Berryhill*, No. 3:18-CV-00180-FDW, 2019 WL 1782133, at *6 (W.D.N.C. Apr. 23, 2019); *Hutchins v. Berryhill*, No. 18-10182, 2019 WL 1353955, at *3 (E.D. Mich. Mar. 26, 2019) (rejecting report and recommendation); *Diane S.P. v. Berryhill*, No. 4:17cv143, 2019 WL 1879256, at *23 (E.D. Va. Mar. 21, 2019) (adopting report and recommendation); *Velasquez ex rel. Velasquez v. Berryhill*, No. CV 17-17740, 2018 WL 6920457, at *2-3 (E.D. La. Dec. 17, 2018) (collecting cases), report and recommendation adopted, 2019 WL 77248 (Jan. 2, 2019); *Flack v. Comm'r of Soc. Sec.*, No. 2:18-cv-501, 2018 WL 6011147, at *4 (S.D. Ohio Nov. 16, 2018) (collecting cases), report and recommendation adopted, 2019 WL 1236097 (S.D. Ohio Mar. 18, 2019). Claimant's citation to a handful of district court decisions from other districts to the contrary is not persuasive. (Doc. 14, at 3-4).

The Court sees no reason to depart from its prior holdings on this issue and finds that claimant waived her Appointments Clause challenge by declining to raise the issue during the administrative proceedings. By declining to raise claimant's Appointments Clause challenge during the administrative proceedings, claimant did not make a "timely challenge" to the ALJ's appointment, and, accordingly, claimant waived the issue. Claimant's argument that it would have been futile to raise the issue below is unavailing to claimant's as-applied challenge and the Court declines to exercise its discretion under *Freytag v. Commissioner*, 501 U.S. 868 (1991), to excuse claimant's waiver here.

Thus, the Court finds claimant waived her Appointments Clause argument.

## VI.    CONCLUSION

For the aforementioned reasons, the Court finds that the ALJ did not err in determining claimant was not disabled, that the ALJ properly determined claimant's physical RFC assessment, and that the ALJ properly weighed the opinion of claimant's psychiatrist. The Court also finds that claimant waived any claim that the ALJ was not

appointed in a constitutional manner. Accordingly, the Court **affirms** the Commissioner's decision.

     **IT IS SO ORDERED** this 24th day of September, 2019.


_____
C.J. Williams
United States District Judge
Northern District of Iowa